UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**RAYMOND JAMES & ASSOCIATES,**

      **Plaintiff,**

vs.                                                            Case No. 8:07-CV-239-T-27TBM

**THE BANK OF NEW YORK TRUST COMPANY, N.A.,**

      **Defendant.**

_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion to Dismiss (Dkt. 5) and Plaintiff's Opposition (Dkt. 11). Upon consideration, Defendant's Motion to Dismiss (Dkt. 5) is GRANTED.[1]

Rule 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to give fair notice to the defendant of the nature of the claim and the grounds on which it is based. Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007)). Although a complaint need not include detailed factual allegations, it must contain sufficient factual allegations, which, when taken as true, "raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1964-65. A conclusory statement of the elements of a cause of action will not suffice to state a claim under Rule 8. *Id*. at 1965. Rather, a complaint must include enough facts to suggest the required elements. *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007). A

---

[1] The motion to dismiss was filed pursuant to Rule 12(b)(6), Fed. R. Civ. P. The Court declines to consider matters outside the pleading.

well-pleaded complaint may survive a motion to dismiss even if it appears "that recovery is very remote and unlikely." *Twombly*, 127 S. Ct. at 1965 (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)).  Nonetheless, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 1966 (citations omitted).  Factual allegations that are "merely consistent" with the plaintiff's legal theory will not suffice when, "without some further factual enhancement [they stop] short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations omitted).  Here, on the facts alleged in the Complaint, Defendant has established that Plaintiff can prove no set of facts which would entitle it to relief, as Plaintiff has not plead that it was a "registered holder" entitled to notice of prepayment.

**Facts taken as true**

The Complaint alleges that in August 1992, General American Transportation Corporation ("GATX") issued $60,000,000 in Pass Through Certificates and filed that offering with the Securities and Exchange Commission (Dkt. 1, ¶ 5).  Individual interests, referred to as certificates or "Notes," were sold to the public as GATX securities (Dkt. 1, ¶¶ 5, 6).  Wilmington Trust Company, as Owner Trustee, entered into a Trust Indenture and Security Agreement, GATC Trust No. 92-1A ("Indenture") with First National Bank of Chicago, as Indenture Trustee. (Dkt. 1, ¶¶ 2, 6).  Defendant is the successor trustee under the Indenture and, according to Plaintiff ("RJA"), "assumed an express contractual fiduciary relationship with, and both contractual and necessarily-implied or ancillary fiduciary duties owed to, holders of the Notes, including, without limitation, RJA and those who purchased any Notes from or through RJA." (Dkt. 1, ¶ 7).

Defendant was notified on October 13, 2006 by GATX that it would prepay all of the outstanding Notes under the Indenture (Dkt. 1, ¶ 9).  Plaintiff alleges that Defendant failed to "give

2

prompt notice" of that prepayment indication "'as soon as' BONY acquired 'knowledge' of the full prepayment of the Notes . . ." (Dkt. 1, ¶¶ 9-10). Plaintiff alleges that Defendant, pursuant to Section 2.10(d) of the Indenture, was required to provide "25 days' advance notice to all holders of the Notes "of any prepayment, or refinancings," and that it failed to do so (Dkt. 1, ¶¶ 8, 11 ).

Plaintiff alleges that Defendant, in violation of its duty to give not less than 25 days' notice, "set or concurred in the setting of, the prepayment date" of November 7, 2006 (Dkt. 1, ¶ 11). Defendant "finally gave notice to the Depository Trust Corporation" ("DTC") on October 27, 2006 that the Notes were to be fully prepaid. Plaintiff's traders did not receive actual notice of the DTC's published notice of October 31, 2006 until November 1, 2006 (Dkt. 1, ¶ 13, 15). Plaintiff alleges that Defendant was "required to notify the market and the holders of the Notes no later than 25 days prior to the date of prepayment, i.e. October 13, 2006, the date BONY actually received notice of the full prepayment from GATX or Wilmington." (Dkt. 1, ¶ 22).

Plaintiff, without notice of the prepayment, purchased "$10,890,094.24 then current face amount of the Notes for $11,577,368.08," paying a "market price of $106.311 per $100 of then current face amount" of the Notes (Dkt. 1, ¶ 12). On November 1, 2006, before it received notice of the prepayment, Plaintiff sold a portion of the Notes to Geneve Corporation (Dkt. 1, ¶ 17). That sale was cancelled and rescinded after Plaintiff received notice of the prepayment and Plaintiff reimbursed the purchasers the difference between the sale price and the prepayment price (Dkt. 1, ¶ 19). Plaintiff also sold Notes to MidSouth Capital Corporation on October 31, 2006, before it had notice of the prepayment. MidSouth is seeking reimbursement of its losses from Plaintiff (Dkt. 1, ¶ 20). Finally, Plaintiff retained $1,905,766.49 in Notes, which it purchased without notice of the prepayment, suffering losses as a result of the prepayment (Dkt. 1, ¶ 21).

**Counts One and Two**

In Count One, Plaintiff alleges that Defendant breached its fiduciary duties to Plaintiff in three ways. First, Plaintiff alleges that Defendant breached its fiduciary duty to Plaintiff "and other holders" by failing to give "prompt" notice "as soon as" Plaintiff acquired "knowledge" that the prepayment was to occur. (Dkt. 1, ¶ 26). Second, Plaintiff alleges that Defendant breached its fiduciary duty to Plaintiff "and other holders" to give at least 25 days notice of the prepayment. (Dkt. 1, ¶ 27). Third, Plaintiff alleges that Defendant breached its fiduciary duty to "to make certain that the methods of giving such notice were effective to communicate to 'all' holders and to the trading marketplace for such Notes, in a timely fashion, that the Notes were being fully prepaid . . ." (Dkt. 1, ¶ 28).

In Count Two, Plaintiff alleges that the Indenture was "created for the express benefit, security and protection of (Plaintiff) and other holders of the Notes," and that Defendant breached certain express and implied contractual obligations and duties arising from the Indenture, including giving "prompt" notice of prepayment, 25 days notice of prepayment and to make certain the methods of giving notice were effective. (Dkt. 1, ¶¶ 32, 34-36, 38).

In its motion to dismiss, Defendant argues that Plaintiff does not allege that it was a "registered holder" of the Notes and therefore Defendant owed no contractual or fiduciary duty to Plaintiff under the Indenture. Defendant urges that the Indenture is central to Plaintiff's claims, undisputed by the parties, and should be considered in assessing whether the Complaint states a cause of action (Dkt. 5, n. 3, p. 3)(citations omitted). The Court agrees and finds that the Indenture may be considered without converting the motion to dismiss into a summary judgment motion. Plaintiff does not object to consideration of the Indenture.

**Count One**

In Count One, Plaintiff alleges breach of fiduciary duties, premised on provisions of the Indenture and "implied duties necessarily arising from the role and express undertakings of BONY under the Trust Indenture . . ." (Dkt. 1, ¶ 25). Essentially, Plaintiff relies on the notice requirements of Section 2.10(d) of the Indenture and Defendant's duty to exercise reasonable care on behalf of all holders of the notes.[2]

Preliminarily, Defendant argues that its duties are defined exclusively by the Indenture and that no duties outside the Indenture, including any fiduciary duties, were "owed to Plaintiff or anyone else." (Dkt. 5, p. 13). Under New York law, an indenture trustee's duties and obligations "are exclusively defined by the terms of the indenture agreement." *Meckel v. Continental Resources Co.,* 758 F.2d 811, 816 (2d Cir. 1985).[3]

> It is important that a bank's obligations with respect to notice be limited to those agreed upon, subject only to the requirement that the provision for notice be reasonable. That Congress recognized these significant economic considerations is reflected in 15 U.S.C. § 77 ooo(a)(1) of the Trust Indenture Act. This governing statute specifically states that an "indenture ... may provide that ... the indenture trustee shall not be liable except for the performance of such duties as are specifically set out in such indenture." Paragraph 6.01(a) of the indenture states that "(1) the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, and no implied covenant or obligation shall be read into this Indenture against the Trustee...." An indenture trustee is not subject to the ordinary trustee's duty of undivided loyalty. Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement.

---

[2] The Indenture expressly articulates, in Section 2.10(d), the Trustee's duty to provide notice in the event it gains knowledge that prepayment of the Notes "is to occur." (Dkt. 5, Ex. A, Section 2.10(d)). To the extent, therefore, Plaintiff relies on implied duties beyond the scope of the specific notice duty set forth in Section 2.10(d), Plaintiff's reliance is misplaced. The Indenture, in Section 5.04, expressly provides that "no implied duties or obligations shall be read into this Indenture against the Indenture Trustee." (Dkt. 5, Ex. A, Section 5.04)). Contrary to Plaintiff's interpretation, this exculpatory provision does not pertain to the Trustee's duties in the event of a default.

[3] The Indenture contains a choice of law provision, whereby the "laws of the state of New York" govern the Indenture "in all respects." (Dkt. 5, Ex. A, Section 10.12).

*Id.* at 815-816.  The New York cases relied on by Plaintiff follow this general rule. *See AMBAC Indem. Corp. v. Bankers Trust Co.,* 151 Misc. 2d 334, 338-39, 573 N.Y.S.2d 204, 207 (N.Y. Sup. Ct. 1991); *New York State Med. Care Facilities Fin. Agency v. Bank of Tokyo Trust Co.,* 163 Misc. 2d 551, 556-57, 621 N.Y.S.2d 466, 470 (N.Y. Sup. Ct. 1994).  Notwithstanding the general rule, an indenture trustee may be required to provide notice of an event such as a redemption, in order to satisfy its obligation to exercise reasonable care. *Bank of Tokyo Trust Co.*, 163 Misc. 2d at 557 ("[T]he existence of the general rule governing indenture trustee does not absolve BOTT of responsibility in this action for failing to notify plaintiff of the early redemption call, because the exculpatory provisions in the MCFFA Bond Resolution do not explicitly define the parameters of BOTT's responsibilities, nor do they unambiguously limit BOTT's liability for negligence to postdefault events."); *Grace v. Sterling, Grace & Co.,* 30 A.D.2d 61, 64, 289 N.Y.S.2d 632, 638 (N.Y. App. Div. 1968).

Here, unlike the trust discussed in *Bank of Tokyo Trust Co.*, the Indenture explicitly defines the parameters of Defendant's duty to provide notice.  Section 2.07 expressly authorized Defendant, as Trustee, to consider only "registered holders" as holders of the Notes *for all purposes*. (Dkt. 5, Ex., Section 2.07).  The holders to whom Defendant owed a duty to provide notice were therefore limited by the express terms of the Indenture to "registered holders."  Accordingly, absent an allegation that Plaintiff was a "registered holder," Defendant was under no duty to provide notice of prepayment to Plaintiff.

Plaintiff has not alleged that it is a "registered holder" and there is no basis in the Complaint from which to infer that fact.  Count One therefore fails to allege an essential factual component

establishing, beyond speculation, Plaintiff's entitlement to relief. Accordingly, Count One does not meet the threshold pleading requirement of Rule 8, as discussed in *Twombly*, 127 S. Ct. at 1964-65 (Complaint must contain sufficient factual allegations, which, when taken as true, "raise a right to relief above the speculative level.")

**Count Two**

In Count Two, Plaintiff pleads breach of contractual duties by Defendant, including its obligation to give "prompt" notice to "all holders" "as soon as" Defendant had knowledge that such prepayment was to occur (Dkt. 1, ¶¶ 34-36). Defendant argues that Count Two fails to state a cause of action because Plaintiff was not a holder of the Notes on October 19, 2006, "the event Plaintiff asserts caused its 'loss'" (Dkt. 5, p. 11).[4] Defendant again argues that by virtue of Section 2.07 of the Indenture, it was entitled to "deem and treat the registered holder" of the Notes "as the absolute owner and holder . . . for all purposes," and therefore it was only required to give notice to registered owners (Dkt. 5, p. 11).

Preliminarily, contrary to Plaintiff's contention, the indenture does not require that the Trustee provide notice to the "trading marketplace." Section 5.04 expressly exculpates the Trustee from having to take any action "except as expressly provided by the terms of this Indenture" and that "no implied duties or obligations shall be read into this Indenture against the Indenture Trustee." (Dkt. 5, Ex. A, Section 5.04). The Indenture expressly provides, in Section 10.06, that nothing in

---

[4] Defendant learned of GATX's intent to prepay the Notes on October 13, 2006 (Dkt. 1, ¶ 9). Plaintiff alleges that GATX's action "immediately triggered BONY's duty, as Indenture Trustee, to 'give prompt notice' under . . . Section 2.10(d) of the Trust Indenture," and that as a result, "no timely notice was given to RJA's seller . . or to RJA or other holders or DTC . . . ." *Id.* However, according to the allegations of the Complaint, Plaintiff was not a holder of Notes on October 13, 2006. Plaintiff became a "holder" of Notes on October 19, 2006, when, according to the Complaint, Plaintiff purchased Notes. (Dkt. 1, ¶ 12). To the extent, therefore, Plaintiff relies on the Indenture's requirement that the Trustee give "prompt notice" to the holders of GATX's intent to prepay the Notes, Defendant could not have breached that duty as to Plaintiff because Plaintiff was not a "holder" of the Notes on October 13, 2006.

the Indenture "shall be construed to give any Person other than the Owner trustee, . . . Indenture trustee, Owner Participant . . . and the holders . . . any legal or equitable right, remedy or claim under or in respect of this Indenture or any . . . Note." (Dkt. 5, Ex. A, Section 10.06).

As discussed, the Trustee's duties are defined exclusively in the Indenture. *Meckel*, 758 F.2d at 816. The Indenture specifies only that prompt notice of prepayment be given only to "all holders." (Dkt. 5, Ex. A, Section 2.10(d)). The analysis of whether Plaintiff has a viable cause of action for breach turns on whether it was entitled to that notice. From the plain language of the Indenture, it was not, unless Plaintiff was a "registered holder" at a time when notice of prepayment was required.

As previously discussed, the Indenture expressly authorized the Trustee to "deem and treat" only a registered holder of a Note as the "absolute owner and holder" for purposes of payment and "all other purposes." (Dkt. 5, Ex. A, Section 2.07). Plaintiff does not allege that it was a registered holder of Notes. Plaintiff's conclusory allegations that it was entitled to notice of prepayment as a holder are contradicted by the plain language of the Indenture. Although the factual allegations of the Complaint are taken as true for purposes of the motion to dismiss, "conclusory allegations and unwarranted deductions of fact are not admitted as true." *Griffin Industries, Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007) (quoting *Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir. 1974)(citation omitted)).

To survive a motion to dismiss, Plaintiff must plead more than mere legal conclusions. It must allege a specific factual bases for those conclusions or face dismissal. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1263 (11th Cir. 2004). Accordingly, as plead, Count Two, like Count One, fails to state a cause of action because the allegations do not include an essential factual component showing beyond speculation that Plaintiff is entitled to relief. As the express language

of the Indenture forecloses recovery as a matter of law, dismissal is appropriate. *Id.*[5]

Plaintiff may, notwithstanding that it has not claimed to have been a registered holder, be able to amend its claims to assert that it was a registered holder. The Court presumes, in light of the plain language of Section 2.07, that Plaintiff would have taken that position in response to the motion to dismiss. Rather, as evidenced by Plaintiff's argument, it takes the position that it was entitled to be treated as a holder regardless of Section 2.07. For this reason, dismissal will be without prejudice and leave to amend granted. In the event Plaintiff fails to amend, the dismissal will be with prejudice on the basis that Plaintiff is unable to prove any set of facts in support of its claim which would entitle it to relief.

Accordingly, Plaintiff's Complaint is DISMISSED without prejudice. Plaintiff may, within fifteen (15) days, amend it Complaint, failing which the case will stand dismissed with prejudice.

**DONE AND ORDERED** at Tampa, Florida this 18th day of January, 2008.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to:
Counsel of record

---

[5] Plaintiff's argument that "[t]he lower case "h" used in the word "holders" clearly identifies the beneficiaries of BONY's duties as **all holders** - - not merely Registered Holders," is confusing and unpersuasive. Moreover, Plaintiff's argument "[i]f the parties intended to limit the notice just to 'registered holders,' the parties would have used the upper case 'H' or 'Loan Participants,' as it appears in other sections of the Indenture" is likewise confusing and unpersuasive. The only pertinent sections of the Indenture are Section 2.10, which directs that notice be provided to "all holders" and Section 2.07, which provides that the Trustee may "deem and treat the registered holder . . . as the absolute owner and holder . . for all other purposes."