UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**RAYMOND JAMES & ASSOCIATES,**

Plaintiff,

vs.  Case No. 8:07-CV-239-T-27TBM

**THE BANK OF NEW YORK TRUST COMPANY, N.A.,**

Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion to Dismiss With Prejudice Plaintiff's First Amended Complaint (Dkt. 26) and Plaintiff's Opposition (Dkt. 31). Upon consideration, Defendant's Motion to Dismiss (Dkt. 26) is GRANTED.[1]

*Factual Background*

The Amended Complaint alleges that in August 1992, General American Transportation Corporation ("GATC") issued $60,000,000 in Pass Through Certificates and filed that offering with the Securities and Exchange Commission. The proceeds of the offering of the Pass Through Certificates were to be used to finance the purchase of equipment owned by an Owner Trustee and leased to GATC. (Dkt. 21, ¶ 8). Wilmington Trust Company, as Owner Trustee, entered into a Trust Indenture and Security Agreement, GATC Trust No. 92-1A ("Equipment Notes Indenture") with First National Bank of Chicago, as Equipment Notes Indenture Trustee. (Dkt. 21, ¶¶ 2, 8).

---

[1] Defendant argues that the Amended Complaint should be dismissed because it exceeds the scope of the leave granted in the Order granting Defendant's motion to dismiss Plaintiff's original complaint (Dkt. 20). Although the Amended Complaint exceeds the scope of the leave to amend, requiring Plaintiff to re-file its lawsuit is not in the interest of judicial efficiency.

1

Defendant, The Bank of New York Trust Company, N.A. ("BONY"), is the successor trustee under the Equipment Notes Indenture. (Dkt. 21, ¶ 8). In connection with the 1992 offering, GATC created a Pass Through Trust ("Pass Through Trust Indenture") which consisted of interests in the Equipment Notes. BONY is also the trustee of the Pass Through Trust Indenture. (Dkt. 21, ¶ 7).

The Pass Through Certificates themselves were not offered to the public but were instead registered to a single holder, Cede & Co., as nominee of the Depository Trust Company (DTC). Individual interests in the certificates were sold to the public as GATX securities in book-entry form only. (Dkt. 21, ¶ 7). Purchasers of interests in the certificates received only a "book entry" of their ownership, rather than an actual paper certificate, and were described in the Prospectus as "Certificate Owners." (Dkt. 21, ¶ 7). The Pass Through Trust Indenture distinguishes between "Certificateholder or Holder" and "Certificate Owner," defining each term in § 1.01. (Dkt. 26-2; § 1.01). Under those definitions, Plaintiff is a "Certificate Owner" rather than a "Certificateholder" or "Holder."

On October 13, 2006, GATC notified BONY that it would prepay all of the outstanding Notes under the Indenture (Dkt. 21, ¶ 16). Plaintiff alleges that BONY, as Equipment Notes Indenture Trustee, was required to "give prompt notice" "'as soon as' BONY 'shall have knowledge that such payment is to occur,'" to BONY as Pass Through Trust Indenture Trustee. (Dkt. 21, ¶¶ 15, 16). Plaintiff alleges that BONY, pursuant to the Pass Through Trust Indenture, was then required to provide "'not less than' 20 days' written notice to DTC as registered holder of record of all Pass Through Certificates, in order that . . . DTC could fulfill its function and purpose of disseminating BONY's notice to DTC Participants and Indirect Participants, all at least 20 days before the intended November 7, 2006 Special Payment Date." (Dkt. 21, ¶ 16).

Plaintiff alleges that Defendant failed to provide timely notice. (Dkt. 21, ¶¶ 16). According

to Plaintiff, Defendant "did not send such notice to DTC until two weeks had elapsed, on Friday, October 27, 2006." (Dkt. 21, ¶ 16). Plaintiff also alleges, pursuant to Section 2.10(d) of the Equipment Notes Trust Indenture, that the prepayment date could not be less than 25 days after the date of notice to holders, and that BONY breached its fiduciary duty to Plaintiff by issuing notice to DTC only 11 days prior to the prepayment date. (Dkt. 21, ¶ 17). Plaintiff alleges that "the foreseeable consequences of BONY's dereliction would be that neither SWIB nor its buyer, Plaintiff Raymond James, could have acted to protect themselves on a timely basis from the consequences of the trade that occurred." (Dkt. 21, ¶ 16).[2]

Plaintiff, without notice of the prepayment, purchased "$10,890,094.24 then current face amount of the Book-Entry Certificates for $11,577,368.08," paying a "market price of $106.311 per $100 of then current face amount" of the Book-Entry Certificates. (Dkt. 21, ¶ 19).[3] On November 1, 2006, before it received notice of the prepayment, Plaintiff sold a portion of Book-Entry Certificates to Geneve Corporation. (Dkt. 21, ¶¶ 24-25). That sale was cancelled and rescinded after Plaintiff received notice of the prepayment and Plaintiff reimbursed the purchasers the difference between the sale price and the prepayment price. (Dkt. 21, ¶ 26). Plaintiff also sold a portion of its Book-Entry Certificates to MidSouth Capital Corporation on October 31, 2006, before it had notice of the prepayment. MidSouth is seeking reimbursement of its losses from Plaintiff. (Dkt. 21, ¶ 27). Finally, Plaintiff retained $1,905,766.49 in Book-Entry Certificates, which it purchased without notice of the prepayment, suffering losses as a result of the prepayment. (Dkt. 21, ¶ 28).

---

[2] "Non-party State of Wisconsin Investment Board ("SWIB") . . . sold to Plaintiff the book-entry GATC Pass Through Certificate securities involved in this action." (Dkt. 21, ¶ 3).

[3] "Book-Entry Certificates" are defined in the Pass Through Trust Agreement as "a beneficial interest in the Certificates of such series, ownership and transfers which shall be made through book entries by a Clearing Agency . . . ." (Dkt. 26-2; §1.01).

## Count One: Breach of Fiduciary and Contractual Duty

In Count One, Plaintiff alleges that Defendant breached its fiduciary duties to Plaintiff pursuant to the Pass Through Trust Indenture. Specifically, Plaintiff alleges that the Pass Through Trust Indenture expressly contemplated Certificate Owners, such as Plaintiff, as intended third party beneficiaries of the Pass Through Trust Indenture (Dkt. 21, ¶ 31).[4] Plaintiff alleges that Defendant breached its fiduciary duty by failing to give "prompt" notice "as soon as" Plaintiff acquired "knowledge" that the prepayment was to occur. Plaintiff further alleges that Defendant breached its fiduciary duty to give at least 25 days notice of the prepayment. (Dkt. 21, ¶¶ 33, 34). Finally, Plaintiff alleges that Defendant breached its fiduciary duty to "to make certain that the methods of giving such notice were effective to communicate to all Certificate Owners and to the trading marketplace for the Pass Through Certificates, in a timely fashion, that the Pass Through Certificates were being fully prepaid . . ." (Dkt. 21, ¶ 35).

In its motion to dismiss, Defendant argues that Count One should be dismissed because Defendant owed no fiduciary duty to Plaintiff. Defendant contends that the Pass Through Trust Indenture did not require Defendant to provide Plaintiff with notice of the prepayment and expressly provides that Defendant has no duties or obligations other than those specifically set forth in the Pass Through Trust Indenture. (Dkt. 26, pp. 18-19). In response, Plaintiff argues that under the Pass Through Indenture: "BONY owed Plaintiff RJA clear contractual and fiduciary duties, which it breached. These duties ran directly from BONY to Plaintiff RJA." (Dkt. 31, p. 8). Further, Plaintiff

---

[4] Although not attached to the Amended Complaint, Defendant argues that the Pass Through Trust Indenture is central to Plaintiff's claims and undisputed and may therefore be considered without converting the motion to dismiss into a motion for summary judgment. (Dkt. 26, p. 7 n. 4). As the Pass Through Trust Indenture is referenced in the Amended Complaint and both parties rely on provisions contained in the Pass Through Trust Indenture in support of their respective positions, the Court agrees that the Pass Through Trust Indenture may be considered. Plaintiff does not object to consideration of the Pass Through Trust Indenture.

argues that BONY, as trustee, "incurred an <u>express</u> (not implied) duty under § 4.02 of the Pass Through Indenture to give timely notice ("not less than 20 days") of prepayment of the notes." (Dkt. 31, p. 4).

Plaintiff relies on §§ 3.09 and 4.02 of the Pass Through Indenture in support of its allegations that BONY had an "express duty" to give the Certificateholders and DTC timely notice of the prepayment (Dkt. 31, p. 8). Neither of those sections, however, obligate BONY to provide notice of prepayment to *"Certificate Owners"* like Plaintiff. With respect to notice of prepayment, § 4.02(c) provides, in pertinent part:

> The Trustee shall . . . cause notice each Special Payment . . . to be mailed to each *Certificateholder* of such series at his address as it appears in the Register. In the event of a prepayment . . . of Equipment Notes held in the related Trust, such notice shall be mailed not less than 20 days prior to the date any such Special Payment is scheduled to be distributed.

(Dkt. 26-2, § 4.02(c), at p. 22) (emphasis added).

Under New York law, an indenture trustee's duties and obligations, including the duty to provide notice, "are exclusively defined by the terms of the indenture agreement." *Meckel v. Continental Resources Co.,* 758 F.2d 811, 816 (2d Cir. 1985).[5]

> It is important that a bank's obligations with respect to notice be limited to those agreed upon, subject only to the requirement that the provision for notice be reasonable. That Congress recognized these significant economic considerations is reflected in 15 U.S.C. § 77ooo(a)(1) of the Trust Indenture Act. This governing statute specifically states that an "indenture ... may provide that ... the indenture trustee shall not be liable except for the performance of such duties as are specifically set out in such indenture." . . .

*Id.* at 815-16; *Elliott Assocs v. J. Henry Schroder Bank & Trust Co.,* 838 F.2d 66, 71 (2d Cir.1988) ("It is equally well-established under state common law that the duties of an indenture trustee are

---

[5] The Pass Through Trust Indenture contains a choice of law provision, whereby the "basic agreement and the certificates shall be construed in accordance with the laws of the state of New York and the obligations, rights, and remedies of the parties hereunder shall be determined in accordance with such laws." (Dkt. 26-2, Section 12.04).

strictly defined and limited to the terms of the indenture . . ."). BONY's duty to provide notice of any prepayment is explicitly defined and therefore limited in the Pass Through Indenture.[6] That duty is expressly owed to "Certificateholders," not "Certificate Owners," as those terms are defined in § 1.01 of the Pass Through Indenture. (Dkt. 26-2, § 1.01). Plaintiff is a "Certificate Owner," rather than a "Certificateholder." Plaintiff alleges that Cede & Co. was the registered holder of the subject pass through certificates, as nominee DTC. (Dkt. 21, ¶ 7(c)). Accordingly, Plaintiff was not, according to the express terms of the Indenture, entitled to notice of prepayment.

None of the pertinent documents, including the Pass Through Indenture, expressly require BONY to provide notice of prepayment to *Certificate Owners* like Plaintiff.[7] Rather, Plaintiff relies on BONY's express duty to provide notice to "all holders of the Notes," specifically DTC (Dkt. 21, ¶ 6: "This case is about defendant BONY's failure to follow prescribed notice procedures from

---

[6] Notwithstanding this general rule, an indenture trustee may be required to provide notice of an event such as a redemption, in order to satisfy its obligation to exercise reasonable care. *Bank of Tokyo Trust Co.*, 621 N.Y.S.2d 466, 470-71 (N.Y. Sup. Ct. 1994) ("[T]he existence of the general rule governing indenture trustee does not absolve BOTT of responsibility in this action for failing to notify plaintiff of the early redemption call, because the exculpatory provisions in the MCFFA Bond Resolution do not explicitly define the parameters of BOTT's responsibilities, nor do they unambiguously limit BOTT's liability for negligence to post default events."); *see also Grace v. Sterling, Grace & Co.*, 30 A.D.2d 61, 64, 289 N.Y.S.2d 632, 638 (N.Y. App. Div. 1968).

Here, unlike the trust discussed in *Bank of Tokyo Trust Co.*, the Pass Through Trust Indenture expressly provides that "whenever notice or other communication to the Certificateholders of such series is required . . ., the Trustee shall give all such notices and communications specified to be given to Certificateholders of such series to the Clearing Agency and/or the Clearing Agency Participants . . . ." (Dkt. 26-2, § 3.09(b)). "Certificateholder" is defined in the Pass Through Trust Indenture as "the Person in whose name a Certificate of such series is registered . . . ." (Dkt. 26-2, § 1.01). More specifically, in the event of a prepayment of the Equipment Notes, the Pass Through Trust Indenture expressly requires the Trustee to give the same notice it would be required to give with respect to Special Payments, "to each Certificateholder of such series at his address as it appears in the Register." (Dkt. 26-2, § 4.02(c)). As it is undisputed that the only "Certificateholder" was Cede & Co, as nominee of DTC, Defendant was not required under the Pass Through Trust Indenture to give notice of prepayment to Plaintiff, a "Certificate Owner."

[7] Count One is labeled "Breach of Fiduciary and Contractual Duty." (Dkt. 21, p. 28). Although Plaintiff contends that Defendant owed it a direct contractual duty, Plaintiff has not alleged (nor could it allege) that it is a party to the Pass Through Trust Indenture or that any language in the Indentures obligated BONY to provide notice to anyone other than Certificateholders. Thus, despite Plaintiff's labeling of Count One, a breach of contract claim has not been plead.

BONY to DTC, which were specifically designed . . . as an integral component of the overall structure needed to deliver . . . notice to the plaintiff . . ."). Plaintiff's theory of breach of fiduciary duty is premised on its alleged status as a third party beneficiary of BONY's duty to provide notice of prepayment to DTC, that is: (1) BONY had an express duty to provide notice of prepayment to "all holders;" (2) Plaintiff, as a Certificate Owner, was an intended beneficiary of any notice of prepayment, and (3) as a result of BONY's failure to provide timely notice to DTC, BONY breached a fiduciary duty to Plaintiff, who would have benefitted from advance notice of the prepayment. (Dkt. 21, ¶¶ 31-32).

As plead, Plaintiff's theory of recovery necessarily fails because BONY's duty to provide notice of prepayment is expressly limited by the terms of the Indentures. Trustee duties beyond those contained in the Indentures may not, under New York law and the Indentures, be implied.

Notwithstanding, Plaintiff relies on two purported duties of the Trustee under the Indentures to support its cause of action for breach of fiduciary duty. First, Plaintiff alleges: "As Equipment Note Indenture Trustee, BONY had an express duty to give 'prompt' notice of any prepayment of the Notes to 'all' holders of the Notes 'as soon as' BONY had 'knowledge' that such payment was to occur and at least 25 days before prepayment; . . ." (Dkt. 21, ¶ 33). Plaintiff alleges that "such notice would trigger a cascading set of notices successively to: BONY; DTC; DTC Participants; and Certificate Owners." (Dkt. 21, ¶ 33). Second, Plaintiff alleges that "As Pass Through Indenture trustee, BONY had an express duty to give prompt . . . notice of any prepayment of the Pass Through Certificates to DTC for re-publication to DTC's Participants." (Dkt. 21, ¶ 33). Plaintiff alleges that "Defendant BONY breached both of those interlocking fiduciary duties, which foreseeably and proximately caused the losses for which [Plaintiff] has brought suit in this Complaint." (Dkt. 21, ¶ 33).

While these allegations are taken as true for purposes of the motion to dismiss, they do not support a cause of action against BONY for breach of fiduciary duty. Absent an express duty on the part of BONY to provide notice of prepayment to *Certificate Owners* like Plaintiff, implying such a duty would be contrary to New York law and the express prohibition in § 7.01(1) of the Pass Through Indenture. Section 7.01(1) provides that "no implied covenants or obligations shall be read into this Basic Agreement or related Trust Supplement against Trustee . . ." (Dkt. 26-2, p. 30).

Acknowledging that the Pass Through Indenture does not expressly obligate BONY to provide notice of prepayment to Certificate Owners like Plaintiff, Plaintiff argues that the when the Pass Through Indenture, Equipment Note Indenture and Prospectus are "read *in pari materia*, BONY owed Plaintiff RJA clear contractual and fiduciary duties, which it breached" and that "[t]hese duties ran directly from BONY to Plaintiff RJA." (Dkt. 31, p. 8).

Plaintiff's argument cannot save Count One. BONY's duties as Trustee are controlled by the express terms of the Indenture agreements. Trustee duties and obligations may not be implied. Plaintiff may not contravene the express terms of the Indentures by implying a duty for the benefit of third parties such as Certificate Owners. *Elliott Assocs.*, 838 F.2d at 71. Simply put, Plaintiff's *in pari materia* argument and conclusory contention that "BONY owed Plaintiff RJA clear contractual and fiduciary duties" does not support a fiduciary duty flowing from BONY to Plaintiff as alleged in Count One.

As noted in the Order dismissing Plaintiff's original complaint, §§ 2.07 and 2.10(d) of the Equipment Notes Indenture explicitly define the parameters of Defendant's duty to provide notice. Section 2.10(d) of that Indenture expressly provides that the "Indenture Trustee shall give prompt notice of any prepayment of any of the Equipment Notes *to all holders* of the Equipment Notes . . ." (Dkt. 5-2, Ex. A, p. 12) (emphasis added). Section § 2.07 expressly provides that BONY, as

8

Trustee, is to consider only "registered holders" as holders of the Notes *for all purposes*. (Dkt. 5-2, Ex. A, Section 2.07). The "holders" to whom Defendant owed a duty to provide notice were therefore limited by the express terms of that Indenture to "registered holders." Plaintiff does not allege that it is a "registered holder" and there is no basis in the Amended Complaint from which to infer that fact.

Moreover, like the Pass Through Indenture, the Equipment Notes Indenture prohibits implying any duties or obligations on the Trustee. Section 5.04 expressly exculpates the Trustee from having to take any action "except as expressly provided by the terms of this Indenture" and provides that "no implied duties or obligations shall be read into this Indenture against the Indenture Trustee." (Dkt. 5-2, Ex. A, Section 5.04). Finally, § 10.06 provides that nothing in the Indenture "shall be construed to give any Person other than the Owner trustee, . . . Indenture trustee, Owner Participant . . . and the holders . . . any legal or equitable right, remedy or claim under or in respect of this Indenture or any . . . Note." (Dkt. 5-2, Ex. A, Section 10.06).

In sum, Plaintiff's conclusory allegations that it was entitled to notice of prepayment are inconsistent with the plain language of the Indentures. BONY's express duty to provide notice of prepayment flows directly to the DTC, the Certificateholder, not *Certificate Owners* like Plaintiff. Implying a duty to provide notice of prepayment under the guise of a fiduciary duty is prohibited by the Indentures and contrary to New York law.[8] Plaintiff must allege facts establishing that BONY

---

[8] *AMBAC Indemnity Corp. v. Bankers Trust Co.*, 573 N.Y.S.2d 204 (N.Y. Sup. Ct. 1991), on which Plaintiff relies, does not change the result. In AMBAC, Justice Baer reiterated the general rule that an indenture trustees' duties are defined by the indenture:

> I do not, however, read the case as undoing the peculiar and limited rule of the indenture trustee, which has been long recognized and which is a reality of modern commercial finance. Thus, I think that *United States Trust Co.* is consistent with what I understand to be the controlling law-that the duties of an indenture trustee can be limited to those set forth in the indenture and, as a result, the trustee does not owe the broad fiduciary duties of an ordinary trustee prior to an event of default, except that the trustee is at all times obligated to avoid conflicts of interest with the beneficiaries. This interpretation

owed a fiduciary duty to Plaintiff as a Certificate Owner. Plaintiff's conclusory allegation that a fiduciary relationship existed between BONY and Plaintiff is insufficient.[9] Although the factual allegations of the Amended Complaint are taken as true for purposes of the motion to dismiss, "conclusory allegations and unwarranted deductions of fact are not admitted as true." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (quoting *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (citations omitted)).

Plaintiff correctly argues that an indenture trustee assumes fiduciary duties to its bond holders and that those duties are not, with respect to bond holders, circumscribed by the contractual duties contained in an indenture. *See U. S. Trust Co. of New York v. First Nat'l City Bank*, 57 A.D.2d 285, 296 (N.Y. App. Div. 1977) (citing *Dabney v. Chase Nat'l Bank*, 196 F. 2d 668 (2d Cir. 1952), *aff'd*, 45 N.Y.2d 869 (N.Y. 1978). However, those duties, to the extent they are not found in the indentures, arise after a default in the underlying indebtedness occurs. *Magten Asset Mgt. Corp. v. Bank of New York*, 2007 WL 1326795, at *7 (N.Y. Sup. Ct. May 8, 2007) (dismissing cause of action based upon third party beneficiary status where there was no default in the underlying

---

is supported by *Elliott Associates v. J. Henry Schroder Bank & Trust Co.*, supra, 838 F.2d at 73; *Broad v. Rockwell International Corp.*, supra, 642 F.2d at 959; and Judge Friendly's decision in In re *W.T. Grant Co.*, supra, 699 F.2d at 612.

573 N.Y.S.2d at 207. While that court did seemingly recognize that certain fiduciary obligations on the part of an indenture trustee could arise, it by no means determined that fiduciary duties outside the context of the indenture trustee's trust duties existed, other than of course a fiduciary duty arising after an event of default and the duty to avoid conflicts of interest and refrain from advancing its own interests. "Whether, as AMBAC argues, Bankers Trust had fiduciary obligations with respect to the precise pre-default duties it undertook and whether *United States Trust Co.* and *Dabney* so hold are matters I need not now address. These issues may surface later, on a motion for summary judgment or in some other context, since there appears to be a difference of view between the parties as to the standard of care that Bankers Trust was obliged to satisfy with respect to the specific pre-default chores it assumed." *Id.* at 208.

[9] "A fiduciary relationship 'exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *AG Capital Funding Partners, L.P. v. State Street Bank and Trust Co.*, --- N.E.2d ----, 2008 WL 2510628 (N.Y. June 25, 2008) (citations omitted).

indebtedness):

> The law distinguishes between an indenture trustee's pre-default and post-default duties. Before default, the indenture trustee is liable only for the obligations set out in the indenture (15 USC 77ooo [a][1] ). The trustee is not obligated to affirmatively advance the debenture holders' interest in the period before default (citation omitted). An indenture trustee's post-default duty toward the investors is significantly higher than its pre-default duty. In case of a default, the trustee "shall ... use the same degree of care and skill ... as a prudent man would exercise or use under the circumstances in the conduct of his own affairs" (15 USC 77ooo [c] ). After a default, the trustee is under an enforceable obligation to act prudently to preserve the trust assets for the benefit of the investors. (citing *Beck v. Manufacturers Hanover Trust Co.*, 218 A.D.2d 1, 12 (N.Y. App. Div. 1995)).

Plaintiff does not allege a default in the underlying indebtedness. Moreover, Plaintiff cites no New York authority recognizing a cause of action for breach of fiduciary duty, or for that matter, a third party beneficiary claim, for Certificate Owners like Plaintiff, as opposed to bond holders. The cases Plaintiff relies on address an indenture trustee's fiduciary duties which arise after a default under the bond obligations has occurred. In those circumstances, the trustee is deemed to be in a position to protect the interests of its bondholders. *See Beck v. Mfrs. Hanover Trust Co.* 218 A.D.2d 1, 13 (N.Y. App. Div. 1995):

> The trustee must in the post-default context act prudently, but only in the exercise of those rights and powers granted in the indenture. The scope of the trustee's obligation then is still circumscribed by the indenture, albeit less narrowly. The trustee is not required to act beyond his contractually conferred rights and powers, but must, as prudence dictates, exercise those singularly conferred prerogatives in order to secure the basic purpose of any trust indenture, the repayment of the underlying obligation. To hold an indenture trustee to a fiduciary duty of undivided loyalty and to impose a post-default obligation of prudence in the exercise of the rights and powers accorded by the indenture, of course, only constitutes the embrace of certain standards, it does not in any way signify that those standards have not been met. And, indeed, with one notable exception it would appear that the various claims of fiduciary inadequacy made against the present Trustee are without merit.

To survive the motion to dismiss, Plaintiff must plead more than mere legal conclusions. It must allege a specific factual basis for those conclusions or face dismissal. *Jackson v. BellSouth*

*Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004). Accordingly, as plead, Count One fails to state a cause of action for breach of fiduciary duty because Plaintiff's allegations are contradicted by the express terms of the relevant trust indentures.[10] As the express language of the Indentures forecloses recovery as a matter of law, dismissal is appropriate. *Id.*

*Van Gemert v. Boeing Co.*, 520 F.2d 1373 (2d Cir. 1975) and *Elliot Assocs. v. J. Henry Schroeder Bank & Trust Co.*, 838 F.2d 66 (2d Cir. 1988), relied on by Plaintiff, are distinguishable. Unlike here, the plaintiffs in both of those cases were debenture holders to whom the trustee was expressly required to give notice of redemption pursuant to the terms of the respective indentures. Plaintiff's reliance on BONY's failure to provide timely notice to the "holders" or "Certificateholders" is unavailing, since Plaintiff was neither.

Accordingly, Count One of the Amended Complaint is DISMISSED.

### Count Two: Intended Third Party Beneficiary Claim

In Count Two, Plaintiff alleges that it was an intended third party beneficiary of the Pass Through Trust Indenture. (Dkt. 21, ¶¶ 38-39). Plaintiff alleges that Defendant breached its contractual and fiduciary duties to provide timely notice to DTC "so as to get such notices into the hands of DTC Participants, Indirect Participant[s], Certificate Owners, and assignees of Certificate Owners, as intended third party beneficiaries." (Dkt. 21, ¶¶ 40-41). Plaintiff also alleges that Defendant had a duty to make certain that the prepayment date was no less than 25 days after Defendant gave notice to "all" holders of Equipment Notes and to provide sufficient copies of the

---

[10] Prepayment of the equipment notes is not a default under the Indentures. The circumstance plead accordingly involve pre-default trustee duties, which are limited to those "specifically set out in [the] indenture. *Elliot Assocs.*, 838 F.2d at 70-72 (citing Trust Indenture Act, 15 U.S.C. § 77ooo(a)(1)); *Magten Asset Management Corp.*, 2007 WL 1326795, at *7 ("The law distinguishes between an indenture trustee's pre-default and post-default duties."). Plaintiff has not plead that a default occurred under the Indentures, a circumstance from which fiduciary responsibilities may arise.

prepayment to DTC on a timely basis for dissemination. (Dkt. 21, ¶¶ 42-43). Defendant contends that Count Two fails to state a cause of action because Plaintiff was not an intended beneficiary of the Pass Through Trust Indenture due to the existence of a negating clause contained in the Pass Through Trust Indenture.

"For a third-party beneficiary to succeed on a breach of contract claim under New York law, the party 'must establish (1) existence of a valid and binding contact between other parties, (2) that the contract was intended for his or her benefit, and (3) that the benefit to him or her is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*, No. 06 Civ. 3972(LTS)(JCF), 2007 WL 2059239, at *3 (S.D.N.Y. July 19, 2007) (internal citations omitted). "Moreover, New York law requires that the parties' intent to benefit a third-party be shown on the face of the contract." *Id.* (internal citations omitted); *Conklin v. City of Saratoga Springs*, 267 A.D.2d 841, 842 (N.Y. App. Div. 1999) (third party beneficiary status requires an express provision identifying plaintiff as intended third-party beneficiary or that contract otherwise reveals a specific intent to confer a benefit upon the plaintiff or permit the plaintiff to enforce the contract terms). New York law distinguishes between an intended third party beneficiary and an "incidental beneficiary," who would not enjoy third party beneficiary status. *See BDG Oceanside, LLC v. RAD Terminal Corp.*, 14 A.D.3d 472, 473 (N.Y. App. Div. 2005).

Plaintiff's argument that Section 3.02 of the Trust Supplement "expressly spell[s] out" that Certificate Owners are intended beneficiaries is not persuasive. (Dkt. 32, p. 12). Section 3.02 of the Trust Supplement provides: "The Trustee, upon execution and delivery of the Trust Supplement . . . declares that the Trustee holds and will hold such right, title, and interest, together with all other

property constituting the Trust Property of the Trust created hereby, for the benefit of all present and future holders of the Series 1992-I Certificates . . . ." (Dkt. 26-3, § 3.02). Plaintiff essentially contends that the term "holders" includes Certificate Owners. However, the only "holder" of the Certificates is Cede & Co., as nominee of DTC.[11]

Finally, Plaintiff's attempt to assert third party beneficiary status of the Pass Through Trust Indenture is negated by an express provision in the Indenture. The Pass Through Trust Indenture provides that "[n]othing in this Basic Agreement or in the Certificates of any series express or implied, shall give to any person, other than the parties hereto and their successors hereunder, and the Certificateholders, any benefit or any legal or equitable right, remedy or claim under this Basic Agreement." (Dkt. 26-2, § 12.09).

"Under New York law, the effectiveness of a negating clause to preclude third-party beneficiary status is well-established: '[w]here a provision exists in an agreement expressly negating an intent to permit enforcement by third parties, . . . that provision is decisive.'" *India.Com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005) (quoting *Nepco Forged Prods., Inc. v. Consolidated Edison Co. of N.Y.*, 99 A.D.2d 508 (N.Y. App. Div. 1984)); *see also PT. Bank Mizuho Indonesia v. PT. Indah Kiat Pulp & Paper Corp.*, 25 A.D.3d 470, 471 (N.Y. App. Div. 2006) ("More significantly, plaintiff's assertion that it was a third-party beneficiary of the indenture agreements is demonstrably negated by the explicit language in § 11.2 of the Indentures, precluding anyone other than the parties thereto, their successors or noteholders from enforcing its terms."); *Treeline Garden City Plaza, LLC v. Berkley-Arm, Inc.*, 824 N.Y.S.2d 767, at *2 (Table) (N.Y.Sup. 2006) ("When a contract 'expressly

---

[11] Although not capitalized in Section 3.02 of the Trust Supplement, the term "Holder" is given the same definition as the term "Certificateholder" in the Pass Through Trust Indenture. (Dkt. 26-2, § 1.01).

negates enforcement by third parties, that provision is controlling.'") (quoting *Morse/Diesel v. Trinity Indus., Inc.*, 859 F.2d 242, 249 (2nd Cir. 1988)).

Accordingly, in light of § 12.09, Plaintiff cannot establish that it was an intended third party beneficiary of the Pass Through Trust Indenture. *Id.* Plaintiff's contention that "an issue of fact exists as to whether the parties intended to benefit the plaintiff" does not overcome the effect of § 12.09. Likewise, Plaintiff's argument that the Prospectus evidences the intent of the parties to benefit the Certificate Owners is rejected. (Dkt. 31, pp. 4, 8). Moreover, the Trust Supplement expressly provides that "the Trustee hereby declares the creation of this Trust for the benefit of the Certificateholders . . . ." (Dkt. 26-3, p.1). Accordingly, Plaintiff cannot state a claim for third party beneficiary breach of contract. Count Two of Plaintiff's Amended Complaint is DISMISSED.

### Count Three: Breach of Duty of Care in Contract Performance

In Count Three, Plaintiff alleges in the alternative that Defendant acted negligently in the performance of its contractual duties under the Pass Through Trust Indenture, giving rise to tort liability. (Dkt. 21, ¶¶ 48-51). Plaintiff contends that under New York law damages are available to a non-contracting person who is injured as a result of a contracting party's negligent performance of contractual duties. (Dkt. 31, p. 16). Defendant disputes that damages for negligence are available to a non-contracting person, except in narrow circumstances involving physical injury to a third party or the third party's property. (Dkt. 26, p. 22).

"[A] contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party." *Espinal v. Melville Snow Contractors*, 98 N.Y.2d 136, 139 (N.Y. 2002). However, a contracting party may be liable in tort to a third party if one of three circumstances exist: "(1) where the contracting party, in failing to exercise reasonable care in performance of his duties,

launched a force or instrument of harm, (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties, and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely." *Id.* at 140 (internal citations omitted).[12]

Where, as here, only economic loss is alleged, recovery under a tort theory "is permitted under few circumstances . . . ," as "where there is actual privity of contract between the parties or a relationship so close as to approach that of privity," that is, "[a] relationship sufficiently close to privity may be found where the obligor's performance was the "end and aim of the transaction" and was relied upon by a third party to his detriment." *Treeline Garden City Plaza*, at *3 (citing *Glanzer v. Shepard*, 233 N.Y. 236, 238-39 (N.Y. 1922) (tort liability for negligent performance of contract may be available where performance of contract for third party was the "end and aim" of contract and was relied on by third party)).

Count Three does not state a claim for tort liability. As discussed, the "end and aim" of Defendant's performance of its obligations under the Pass Through Trust Indenture was not, by the express terms of the Pass Through Trust Indenture and Trust Supplement, for the benefit of Certificate Owners. Although Plaintiff alleges that it was "eminently foreseeable" to Defendant that if it failed to give timely notice to DTC, Certificate Owners could be adversely impacted, "this . . . does not suffice to create a duty. 'Foreseeability should not be confused with a duty.'" *Strauss v. Belle Realty Co.*, 98 A.D.2d 424, 428 (N.Y. App. Div. 1983) (quoting *Pulka v. Edelman*, 40 N.Y.2d 781, 785 (N.Y. 1976)); *see also City of Olean v. N.Y. State Envtl. Facilities Corp.*, 213 A.D.2d 1018,

---

[12]The first and third exceptions are, on their face, inapplicable to the facts of this case. As discussed below, factual allegations in support of the second exception have not been adequately plead and, in any event, Plaintiff has not established the existence of a legal duty.

1019 (N.Y. App. Div.1995) (negligent performance of contract claim properly dismissed and leave to amend properly denied, where plaintiff failed to allege or present evidence that defendant breached any legal duty independent of its contractual obligations). Plaintiff has not alleged facts giving rise to a legal duty owed by BONY on which to premise tort liability. Even if a viable claim of negligence could be plead, Plaintiff has not alleged facts demonstrating detrimental reliance, an essential element of Plaintiff's claim. *Espinal*, 98 N.Y.2d at 140. Count Three of the Amended Complaint is therefore DISMISSED.

Accordingly, it is **ORDERED**:

(1) Defendant's Motion to Dismiss With Prejudice Plaintiff's First Amended Complaint (Dkt. 26) is **GRANTED**. Plaintiff's First Amended Complaint is dismissed without prejudice. Plaintiff is granted leave to file a second amended complaint within fifteen (15) days, failing which this cause shall stand dismissed with prejudice.[13]

(2) Plaintiff's request for leave to amend to join DTC as a party is **DENIED.**

(3) Plaintiff's request for oral argument is **DENIED.**

**DONE AND ORDERED** in chambers this 18th day of September, 2008.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of record

---

[13] Plaintiff should be mindful, in the event it amends, that Rule 8(a)(2) directs that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Notwithstanding this directive, the Amended Complaint is 47 pages long and includes 54 paragraphs, many of which are repetitive and contain unnecessary and inappropriate commentary and legal argument. Further, many of the paragraphs improperly incorporate prior paragraphs by numerical reference, an inappropriate "shotgun" approach. The Amended Complaint is far from a "short and plain statement of the claims. Its length and repetitive allegations detract from Plaintiff's attempt to state a claim which will survive Rule 12(b) scrutiny. Pleading practices such as these should be avoided.